UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALANDSTACY CORP., ET AL., : | |
| : | |
| Plaintiffs, : | Civil Action No. 11-3439 (JLL) |
| : | |
| v. : | |
| : | |
| DWIGHT FREENEY, ET AL., : | OPINION |
| : | |
| Defendants. : | |

**HAMMER, United States Magistrate Judge**

**I.   INTRODUCTION**

Before the Court is a motion by Defendant Roof Group LLC ("Roof Group") to transfer this matter to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).  Defendant Eva Weinberg has joined Roof Group's motion.  ECF No. 108.  Plaintiffs Salandstacy Corp., Salvatore Feli, and Stacy Feli oppose the motion.  Pursuant to Federal Rule of Civil Procedure 78, the Undersigned did not hear oral argument.  For the reasons set forth below, the Court will grant the motion to transfer and order that this matter be transferred to the United States District Court for the Central District of California.

**II.   FACTUAL BACKGROUND**

Only the facts relevant to Roof Group's motion to transfer are set forth herein.  These facts are based on the allegations in Plaintiffs' First Amended Complaint.  This action involves a contract between Plaintiffs and Roof Group for the management of a restaurant in Los Angeles and the demise of the business relationship between the parties.  Freeney and West met with

1

Salvatore and Stacy Feli (the "Felis") to discuss opening a restaurant in Los Angeles, California—the Rolling Stone Los Angeles ("RSLA"). Amended Compl. at ¶ 28 (ECF No. 52). In April 2010, Freeney allegedly told the Felis that he would supply some of the financial backing for the restaurant and wanted them to help manage the RSLA. Id. at ¶ 30. The parties met on April 7, 2010, in New York City to discuss the particulars of the arrangement. Id. at ¶ 31. Then the Felis traveled to Miami, Florida to meet with David Stern, another alleged financial backer of RSLA. Id. at ¶ 34.[1] Next, the Plaintiffs met with Defendants and executives for Rolling Stone regarding licensing and legal issues in New York City. Id. at ¶ 35. After these meetings—during which, according to Plaintiffs' Complaint, a number of false statements were made—the Felis agreed to relocate to Los Angeles, California to manage the RSLA. Id. at ¶ 38. The Felis hoped that eventually they could return to the northeast and open a New York location. Id. In May, Mr. Feli signed a Term Sheet purportedly with Roof Group. See ECF No. 61-1 (Term Sheet between SalandStacy Cor. and Roof, LLC – May 13, 2010). But as the restaurant was beginning, issues with funding allegedly arose and Plaintiffs were terminated on December 22, 2010. In addition to the funding issues, Plaintiffs allege that Defendants hired a consulting group, Krost, Baumgarten, Kniss, & Guerrero, Inc. ("KBKG")[2] to help oversee the opening of

---

[1] Mr. Stern is also known as Michael Stern and David Millar. He was charged in the Central District of California with conspiracy and wire fraud related to the theft of over $2 million from Freeney and Roof Group and currently incarcerated at the Metropolitan Detention Center in Los Angeles because of these charges. Declaration of David Kettel in support of Def. Mot. ("Kettel Decl."), ¶¶ 3, 4 (ECF No. 103). Similarly, Eva Weinberg is another named defendant who allegedly served as Freeney's financial advisor. Amended Compl. at ¶ 16. She has been criminally charged and her travel is restricted to the Central District of California and the Southern District of Florida, where she has family. Kettel Decl. ¶ 6.

[2] In addition to KBKG itself, Gregg Kniss (a principal shareholder of KBKG) and Jean
(continued...)

RSLA. Plaintiffs also allege that the KBKG Defendants, who are located in Pasadena, California, improperly influenced Roof Group to break their contract with Plaintiffs and hire different managers. It is unclear from the Amended Complaint whether Plaintiffs allege that their agreement with Roof Group ultimately failed due to lack of funding or to the influence of KBKG. In any event, central to the underlying dispute is that the Felis were not retained past December 2010 to manage the RSLA.

## II. PROCEDURAL HISTORY

Plaintiffs originally filed this lawsuit in New Jersey Superior Court, Law Division, Essex County. Defendants removed the matter to this Court on June 14, 2011, and filed a motion to dismiss, which the Court granted in part and denied in part on March 21, 2012. (March 21, 2012 Order, ECF No. 43). On May 4, 2012, Plaintiffs filed an Amended Complaint (ECF No. 52). Defendants moved to dismiss the Amended Complaint. (ECF No. 61). The Court granted Defendants' motion and dismissed Plaintiffs' claims (1) for fraud as against Roof Group, Freeney, and West (Count Two); (2) for breach of fiduciary duty as against Roof Group, Freeney, and West (Count Three); and (3) seeking an accounting as against Roof Group (Count Four) with prejudice.[3] (August 22, 2012 Order, ECF No. 96). Besides those claims against Stern, the only claims that remain are Plaintiffs' breach-of-contract claim against Roof Group and their tortious-

---

[2](...continued)
Kniss (an employee of KBKG) are also named defendants (collectively "KBKG Defendants"). These defendants have not joined this motion or stated any position on it one way or the other.

[3] Counts two and three against Defendant Stern remain, but he has not responded to the Complaint or to the motions in this matter. Stern is currently incarcerated and his counsel has filed a motion to withdraw. In addition, the KBKG Defendants have sought reconsideration of the Court's finding that it has personal jurisdiction over them. ECF No. 101. That motion is still pending.

interference claim against Weinberg and the KBKG Defendants.

Roof Group now seeks to transfer this matter to the Central District of California under 28 U.S.C. § 1404(a).  Defendants Roof Group, West, and Freeney had filed counterclaims against Plaintiffs, but requested leave to voluntarily dismiss their counterclaims without prejudice, which Judge Linares granted on October 9, 2012.  (ECF No. 122).

This motion is now brought only by Roof Group.  Weinberg has filed a letter stating that she joins in the motion.  (September 18, 2012 Letter, ECF No, 108).  Stern and the KBKG Defendants have not joined nor stated any position regarding the motion to transfer.  Plaintiffs have opposed the motion.  (ECF No. 114).

## IV.   DISCUSSION

Section 1404(a) vests a district court with discretion "to adjudicate motions to transfer according to an individualized, case by case consideration of convenience and fairness."  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 23 (1998) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).  Specifically, § 1404(a) provides: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought."

The purpose of § 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  Van Dusen, 376 U.S. at 616.  Courts are not limited to only these factors, however, and should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum."  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); see also Clark v. Burger King Corp., 255 F. Supp. 2d 334, 337 (D.N.J. 2003).  This

standard creates an analysis that "is flexible" with decisions being made based "on the unique facts of each case." Calkins v. Dollarland, Inc., 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-50 (1981)). The burden of establishing the need for transfer rests on the moving party, in this case Roof Group. See Jumara, 55 F.3d at 879.

The Third Circuit has listed the public and private interest factors to be weighed when considering a motion to transfer:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, 55 F.3d at 879 (internal citations omitted).

### A.   Propriety of Venue in Transferee District

The first step in a court's analysis of a motion to transfer is to determine whether venue would be proper in the proposed transferee district. Clark, 225 F. Supp. 2d at 337. Section 1391(a) of Title 28 of the United States Code provides that a civil action may be brought in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

>   (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Although most defendants reside in California, Dwight Freeney is a resident of Indiana. ECF No. 134.[4] Nevertheless, under § 1391(b)(2), a substantial part of the events occurred in Central District of California. This matter centers around the Plaintiffs' management of a restaurant in Los Angeles and contractual duties related to that management. It was the eventual failure of that contract and the business relationship between Plaintiffs and Roof Group that gave rise to this action. Plaintiffs moved to and expected to live in Los Angeles to manage the RSLA, which is also in Los Angeles. The contract was negotiated at various locations, but all efforts focused on events located in or around Los Angeles. Therefore, under § 1391(b)(2), the Central District of California has personal jurisdiction over Defendants. Moreover, Plaintiffs do not dispute that venue could properly be laid in the Central District of California. Pl. Opp. at 5 ("[T]he Central District of California may be one of the possible venues for this action. . . ."). Accordingly, the Court concludes that venue lies in the Central District of California.

---

[4] The citizenship of the parties was not properly pled by Defendants in their removal papers or by Plaintiffs in their original state complaint or their amended complaint. The Court entered an Order to Show Cause why the matter should not be dismissed for lack of subject matter jurisdiction and directing the parties to submit declarations regarding whether there is diversity of citizenship. October 15, 2012 Order (ECF No. 125). The parties timely complied with the Court's order and have set forth sufficient factual allegations to satisfy the Court that there is indeed diversity of citizenship between plaintiffs and defendants. In addition, the amount of controversy is well in excess of $75,000. Therefore, the Court is satisfied that it has subject matter jurisdiction and has withdrawn the Order to Show Cause.

### B.     Private Interest Factors

The Court must next evaluate whether the transfer is in the interest of justice and "must consider both the private and public interests effected by the transfer." Jumara, 55 F.3d at 879; see also Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1946) (evaluating private and public interest factors effected by transfer).

### 1.     Where the Claims Arose

In the instant motion, the parties vigorously dispute where the claims arose. Plaintiffs argue that the center of gravity is here in New Jersey, while Roof Group argues it is in California. This issue is central to deciding this motion and implicates several of the factors. Accordingly, the Court addresses this fact first.

Plaintiffs point to several facts to connect their action to New Jersey: (1) the contract was signed in New Jersey (although Plaintiffs fail to allege so in the Complaint); (2) Defendants directed some communications into New Jersey; (3) Plaintiffs resided in New Jersey for a few months while doing work for Roof Group; and (4) Plaintiffs eventually planned to return to the Northeast to open a second restaurant in New York. Roof Group argues that (1) any contract between the parties was directed at Los Angeles; (2) the RSLA, which Plaintiffs were to manage, was located in Los Angeles; and (3) all facts relevant to the dispute itself—the termination of any agreement between the parties—occurred in the Central District of California.

The Court determines where the claims arose by inquiring into where the allegedly culpable conduct occurred. "The 'locus of the alleged culpable conduct' determines the place where the claim arose." Allied Old English, Inc. v. Uwajimaya, Inc., 2012 U.S. Dist. LEXIS 116261, at *10-11 (D.N.J. Aug. 16, 2012) (quoting Van Cauwenberghe v. Biard, 486 U.S. 517,

529 (1988)). The facts central to this dispute concern the terms of a "contract" between Plaintiffs and Roof Group LLC and the events leading to its alleged breach and the deterioration of the their business relationship. The contract at issue is actually a two-page term sheet that apparently was intended to be memorialized into a more formal agreement, although it never was. Ex. A to Def. Mot. to Dismiss (ECF No. 61-1). It states that "Roof, LLC" is a California limited liability company, and owns and operates the Rolling Stone Los Angeles, in Los Angeles, California. Id. It further states that Plaintiffs entered into a "Management Services agreement" to manage and operate the restaurant. Id. The entirety of the dispute is centered around Plaintiffs' management of RSLA. The contract was directed towards the Plaintiffs' managing the RSLA in California. The restaurant was in Los Angeles, Roof Group was in Los Angeles, Plaintiffs moved to Los Angeles, and Plaintiffs' management responsibilities were centered in Los Angeles.

Even more important, the deterioration of the parties' business relationship and the alleged breach of the contract all involve conduct occurring in California. As stated before, Plaintiffs posit two theories to explain the break down of their relationship with Roof Group broke down. The first theory is that funds did not materialize as promised. These allegations are centered around Stern's activities by himself and in connection with his partner Weinberg. Both Stern and Weinberg are now charged with federal crimes—in the Central District of California—relating to their alleged mishandling of funds for Roof Group. If there was any impropriety by either Stern or Weinberg, it likely occurred in the Central District of California. Nothing in the record before this Court suggests that either Stern or Weinberg have any affiliation with or connection to New Jersey, much less that their conduct relevant to this litigation occurred in or affect New Jersey. As part of this theory, Plaintiffs argue that a number

of false statements were made during contract negotiations. But nowhere do Plaintiffs allege that any significant negotiation occurred in New Jersey. Rather, according to their Amended Complaint, it occurred in New York and Florida, and perhaps California.

Plaintiffs' second theory is that the KBKG Defendants interfered with the contract by convincing Roof Group to fire Plaintiffs and find different managers. This theory also would necessarily involve conduct occurring in the Central District of California, wherein KBKG is located and from which it provides consulting services. Therefore, the locus of the alleged culpable conduct is in the Central District of California.

Plaintiffs invoke a number of connections to New Jersey, including that the contract was signed in New Jersey, and that Plaintiffs resided in New Jersey while providing initial support for RSLA. However, those facts alone are not dispositive. The contract and all of Plaintiffs' efforts were directed to Los Angeles. Moreover, Plaintiffs' suggestion that the contract contemplated the Plaintiffs returning to New Jersey is error. Instead, the contract provides that should Roof Group decide to open a New York location, the Plaintiffs could manage it. ECF 61-1 at 2. Besides being only a mere prospect based entirely on Roof Group's choice, nowhere does the contract mention New Jersey—it concerns New York.[5] Perhaps the Plaintiffs intended to live in New Jersey and commute if they had the opportunity to manage the restaurant, but that is not called for in the contract and is irrelevant to the parties' dispute.

---

[5] Plaintiffs make a number of contentions that ultimately do not withstand scrutiny. For example, they state that "[u]nder the agreement, Plaintiffs were to initially provide services within New Jersey." Pl. Opp. at 8; id. at 9("[A] substantial portion of the services under the agreement in question were performed and to be performed in New Jersey."). The Court has reviewed the alleged contract and finds no such provision. Plaintiffs may have chosen to do some work from New Jersey, but the contract did not require or contemplate it.

Roof Group relies on Santi v. Nat'l Bus. Records Mgmt., 722 F. Supp. 2d 602 (D.N.J. 2010), which the Court finds persuasive. There plaintiff was employed and then terminated by a company in Pennsylvania and brought suit based on his termination in the District of New Jersey. The court transferred the matter to Pennsylvania, explaining that the plaintiff's status as a resident of New Jersey was not enough to connect the matter to this forum:

> Here, Santi filed his Complaint in New Jersey because he currently resides in Sewell, New Jersey. However, the action is based on operative facts that bear little connection to New Jersey. Santi was employed in Pennsylvania (granted, only for three days), he reported to supervisors located in Pennsylvania, and was terminated in Pennsylvania. No acts related to the alleged discrimination occurred in New Jersey.

Id. at 607. The Felis were employed in Los Angeles, the RSLA was located in Los Angeles, and the Felis contract was terminated in Los Angeles. No acts related to the alleged breach of the parties' contract or termination of their relationship occurred in New Jersey.

None of the cases cited by Plaintiff is persuasive or on point. For example, in Business Store, Inc. v. Mail Boxes Etc., No. 11-3662, 2012 U.S. Dist. LEXIS 19381, at *22 (D.N.J. Feb. 16, 2012), the court found that the claims arose in New Jersey because the contract was negotiated, executed, performed in New Jersey, and concerned a franchise business located in New Jersey. See also Calkins v. Dollarland, Inc., 117 F. Supp. 2d 421, 423 (D.N.J. 2000) ("[B]ecause a substantial part of the events giving rise to plaintiff's claim arose in New Jersey, the Court will deny defendants' motion to transfer venue."); Market Transition Facility v. Twena, 941 F. Supp. 462, 467 (D.N.J. 1996) ("New Jersey has a considerable nexus with this case since a substantial part of the events giving rise to the claim occurred in New Jersey."). In those cases, the conduct underlying the claims occurred principally in New Jersey. In this case, as explained

above, the contract contemplated performance principally in the Central District of California, and the core conduct underlying the claims occurred in the Central District of California.

### 2. *Plaintiff's Forum Preference*

Ordinarily, a plaintiff's choice of forum is a "paramount consideration" and should not be "lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted). Nevertheless, Plaintiff's choice is not given dispositive weight. Delta Airlines, Inc. v. Chimet, S.P.A., et al., 619 F.3d 288, 295-96 (3d Cir. 2010) (citing Piper Aircraft Co. v. Reno, 454 U.S. 235, 257 n.23 (1981)); Moreover, a plaintiff's preference deserves "significantly less weight" when the operative facts did not occur in the same jurisdiction. Id.; Frato v. Swing Staging, Inc., 2011 U.S. Dist. LEXIS 91754 (D.N.J. Aug. 17, 2011) ("But courts in this District often give less weight to a plaintiff's forum choice when the dispute at the heart of a lawsuit occurred almost entirely in another state."). In this case, because the Court has found that the operative facts occurred in Los Angeles, Plaintiffs' preference should not be given great weight.

### 3. *Roof Group's Forum Preference*

Roof Group prefers to litigate this matter in the Central District of California, which is where the operative facts occurred. As such, Roof Group's forum preference is entitled to some weight.

### 4. *Convenience of the Witnesses*

Few, if any, party witnesses are located in New Jersey. The Plaintiffs reside in New Jersey, but have also spent considerable time in California. Many defendants are in California: Roof Group, KBKG, Stern, Weinberg, and most likely Kniss and Hagen. Most, if not all, non-

11

party witnesses are likely located in California as well. Kettel Decl. ¶ 12. Freeney, who is no longer a party to the matter, resides in Indianapolis, but has significant connections with Los Angeles as he is an owner of the RSLA. West is a resident of California. Of particular note, the Central District of California is the only forum where currently all defendants may be present during the litigation. As stated before, Stern is currently incarcerated in the Los Angeles area and Weinberg is unable to travel to New Jersey because of her bail conditions.[6] On the other hand, any inconvenience Plaintiffs face is not significantly increased considering that Plaintiffs had relocated to Los Angeles. On balance, this factor favors transfer.

    4.    *Location of Books and Records*

This factor is considered by courts only to the extent that files could not be produced in the alternative forum. In this current electronic age, it is difficult to imagine that business files cannot be produced in either forum. Thus, this factor is neutral because whether this case was transferred or not, one party would be required to transport their documents. See Mercedes-Benz USA, LLC v. ATX Group, Inc., Civil No. 08-3529, 2009 WL 2255727, *4 (D.N.J. Jul. 27, 2009) ("The location of the disputed records is . . . neutral since there is nothing to suggest that the records, which are admittedly in electronic form, cannot be easily transmitted ....").

On the whole, the private interest factors strongly favor transfer to the Central District of California due in large part because that is where the operative facts occurred.

---

[6] Plaintiffs claim that Weinberg would likely be permitted to travel to New Jersey for this litigation but that is mere supposition. Nothing in the record indicates that. Moreover, while it is true that Stern's incarceration is an impediment to him appearing in either Los Angeles or in New Jersey, that impediment is certainly greater were this matter to proceed here. The Court has had to undertake tremendous efforts to schedule a hearing concerning Stern and his counsel's request for withdrawal. It is more likely Stern could be transported for the trial were it to proceed in Los Angeles, than if it were to proceed in New Jersey.

C.     **Public Interest Factors**

As noted, the public factors to be considered by courts include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F. 3d at 879-80 (internal citations omitted). Other public factors include, but are not limited to, "the unfairness of burdening citizens in an unrelated forum with jury duty." Windt, 529 F.3d at 192 (citing Gulf Oil, 330 U.S. at 508-09). "In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." Chimet, supra, at *10.[7]

The Court finds no reason to suggest that the public factors favor keeping this case here. On a whole, these factors are somewhat neutral, although California courts do have an interest in adjudicating matters involving businesses and property located there. When an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale where it may be a matter of local attention, rather than in a remote location where it will be learned of only by report." Coppola v. Ferrellgas, 250 F.R.D. 195, 201 (E.D. Pa. 2008).

---

[7] Plaintiffs raise the lateness of Roof Group's motion as a factor for the Court to consider. Considering the number of motions that have been filed, many from the defendants, it certainly would have been better practice for the Roof Group to bring this motion earlier rather than later. Nevertheless, Roof Group is correct that its filing of the motion was in line with the Court's schedule and that no case or rule suggests that a motion to transfer can be denied solely for untimeliness.

Roof Group argues that it will be easier for California courts to apply California law, but federal courts are accustomed to applying the law of various states, and this factor has little weight.

Finally, the Court finds that a New Jersey community would be unfairly burdened by jury service in this case. Because the conduct did not take place in New Jersey, the conduct did not occur here, and the restaurant and property at issue are not located here, there is no dispute local or significantly related to the New Jersey community. "[W]ithout a dispute local to the community of New Jersey, there is little public interest in subjecting that community to the burdens of jury service." Windt, 529 F.3d at 193. The Court finds that the public factors also somewhat favor transfer to the Central District of California and, on balance, that the private and public factors strongly favor transfer.

V.   CONCLUSION

For the reasons stated above, the Court will grant the motion to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) should be granted. An appropriate Order accompanies this Opinion.

Date: November 5, 2012           s/*Michael A. Hammer*
                                 **UNITED STATES MAGISTRATE JUDGE**